

**NUMBER 13-08-00286-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ANTHONY ROSS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 117th District Court of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Yañez**

Appellant, Anthony Ross, was indicted for one count of burglary of a habitation, two counts of aggravated assault, and two counts of endangering a child.[1]  After a bench trial, Ross was convicted of one count of burglary and two counts of aggravated assault.  The trial court sentenced Ross to fifteen years' imprisonment.  By three issues, Ross contends:

---

[1] *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2) (Vernon Supp. 2008), 30.02(a)(3) (Vernon 2003); *see also id. §* 22.01(a)(1), (2) (Vernon Supp. 2008).

(1) that his convictions for both burglary of a habitation and the aggravated assaults are barred by the Fifth Amendment's guarantee against double jeopardy; (2) the trial court improperly denied his motion for new trial without first conducting a hearing on the matter; and (3) trial counsel rendered ineffective assistance of counsel. We affirm.

## I. BACKGROUND

At trial, Michelle Mizes, witness for the State, testified that Ross was her ex-boyfriend and that she had a restraining order against him. According to Mizes, she requested a restraining order against Ross because he had entered her home on two previous occasions without her permission. Mizes stated that on one previous occasion, after Ross entered her home without permission, a friend of hers, Keon Lovell, shot Ross.

Then, according to Mizes, on September 8, 2007, she was in her home with her friend, Marcus Sneed, when Ross again entered her home without her permission. When Mizes saw Ross, he was "standing there with a – with a gun." Mizes stated that Ross pointed the gun at her face, and pointed the gun at Sneed. When Ross pointed the gun at Sneed, he "cocked it," but the gun did not go off. Mizes testified that Ross said, "You bitch this is like your fault. And I ain't even talking to you. I ain't got nothing to do with you. And this is probably the guy that shot me." Mizes explained to Ross that Sneed was not the person who shot him, and asked Ross to allow Sneed to leave. Mizes stated that Ross then hit her "in the eye with the gun." Mizes suffered a black eye.

Ross told Mizes that it was her fault that he was facing ten years' probation and that he "should just shoot [her] now." Mizes then grabbed her cell phone and ran outside toward a field; Ross chased after her and shot as she fell to the ground. Ross then told Mizes to take off her clothes and stated, "You don't [sic] too much to me. I want you to

2

strip off your clothes and get naked, and I ought to shoot you now." According to Mizes, she was in fear for her life and thought that it was possible that Ross would hurt her with the gun.

Mizes testified that as Ross was leaving, he shot in the air a couple more times. However, Mizes acknowledged that the children were not in physical danger because they were across the street during the incident.

After Ross left, Mizes went into her house to check on Sneed and discovered her bedroom door "busted open" and that Sneed had a cut across his forehead. Although Mizes did not see Ross break down her bedroom door, she assumed that he had done so. According to Mizes, Ross also shot the windows of Sneed's car.

Ross, testifying on his own behalf, claimed that he had not been at Mizes's home the day of the alleged offenses, and that he had been mowing yards with his brother. Ross's brother, Edward Mitchell, stated that on September 8, 2007, Ross was mowing yards with him. As a rebuttal witness, the State called Mizes's ten-year-old daughter, S.M., who testified that she saw Ross outside her home with a gun, and that he ran to a corn field and shot into the air on September 8, 2007.

The trial court found Ross guilty of burglary of a habitation and guilty of two counts of aggravated assault.[2] Ross was sentenced to fifteen year's imprisonment. This appeal ensued.

## II. SEPARATE AND DISTINCT ACTS

By his first issue, Ross contends that a double jeopardy violation has occurred because he was punished for "both Aggravated Assault and for Burglary of a

---

[2] *See id.* §§ 22.02(a)(2), 30.02(a)(3).

3

Habitation . . . when the facts supporting the two types of charges are the same." Ross argues that this Court should affirm the burglary of habitation conviction and vacate the two aggravated assault convictions. The State argues that the evidence "showed at least three separate and discreet [sic] instances of aggravated assault, supporting the burglary and the assaults charged in the indictment." We agree with the State.

In this case, there are two units of prosecution because there are two complainants.[3] Prosecutions of a defendant for the aggravated assault of several individual victims is not prohibited by double jeopardy principles, even if the assaults occur in the same criminal transaction.[4] "Aggravated assault is a result-oriented offense that is complete with the injury of a single individual."[5]

Mizes testified that Ross entered her home without her consent and caused her bodily injury when he struck her face with the gun.[6] Mizes also stated that Ross threatened Sneed with imminent bodily injury when Ross pointed the gun at Sneed and cocked it.[7] The burglary charge was supported by the underlying aggravated assault of Mizes, and count three was an aggravated assault committed against Sneed, a different complainant.[8]

---

[3] *See Phillips v. State*, 787 S.W.2d 391, 395 (Tex. Crim. App. 1990) (providing that the allowable unit of prosecution for an assaultive offense is each complainant).

[4] *In re K.W.G.*, 953 S.W.2d 483, 486 (Tex. App.–Texarkana 1997, pet. denied).

[5] *Id.*

[6] *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1) ("A person commits an offense if . . . [he] intentionally, knowingly, or recklessly causes bodily injury to another."); 30.02(a)(3) (providing that a person commits a burglary if he enters a habitation without the owner's consent and commits a felony or assault).

[7] *See id.* § 22.01(a)(2).

[8] *See In re K.W.G.*, 953 S.W.2d at 486 (concluding that there was no double jeopardy violation when the appellant was convicted of three counts of aggravated assault because each count "required proof of an element that the others did not, i.e., the identity of the individual victim").

4

Therefore, we conclude, that the charges against Ross for burglary of a habitation and aggravated assault of Sneed are not barred by double jeopardy.[9]

However, we must now determine whether a double jeopardy violation occurred when Ross was convicted of burglary based on the underlying aggravated assault of Mizes and count two, aggravated assault of Mizes.[10]  To convict Ross of burglary of a habitation, the State had to prove the following elements:  (1) Ross entered Mizes's habitation; (2) without her consent; and (3) Ross committed or attempted to commit an underlying felony.[11]  Here the State alleged that the underlying felony offense was aggravated assault, and it had to prove all of the elements of that offense including:  (1) Ross intentionally, knowingly, or recklessly caused bodily injury to an individual; and (2) exhibited or used a deadly weapon.[12]   In *Langs v. State*, the court of criminal appeals concluded that "a defendant may not be punished for both the underlying felony and the burglary if the burglary allegation is that the defendant entered a home" without consent and then committed the underlying felony.[13]  However, in this case, Ross has not been convicted of both the underlying felony and the burglary.

The facts of this case are similar to those in *Sanchez v. State*.[14]  In that case, the

---

[9] *See Spradling v. State*, 773 S.W.2d 553, 556 (Tex. Crim. App. 1989) (en banc) ("Prior cases have also held, where there are two victims, a separate victim for each offense, the acts, though occurring at the same time and place, constitute separate offenses involving separate issues of law, and separate prosecutions are not barred by former jeopardy.").

[10] We note that count two of the indictment charged that Ross committed the offense of aggravated assault by threatening Mizes with imminent bodily injury.  *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02(a)(2).

[11] *Id.* § 30.02(a)(3).

[12] *Id.* § 22.02(a)(2).

[13] 183 S.W.3d 680, 686 (Tex. Crim. App. 2006).

[14] 269 S.W.3d 169 (Tex. App.–Amarillo 2008, pet. ref'd).

complainant testified that the appellant attacked her in her son's room, dragged her to another room, and hit her on the head with a gun, causing her head to bleed.[15] The appellant instructed the complainant to take a shower and wash off the blood.[16] Then, after the complainant exited the shower, the appellant stated that he had two bullets in the gun, "'one was for [her], and one was for him.'"[17] The appellant was convicted of two counts of aggravated assault with a deadly weapon.[18]

On appeal, the appellant complained that "his conviction on both counts of aggravated assault with a deadly weapon subjected him to violation of his right against double jeopardy."[19] The appellate court rejected this contention stating, "The protection against double jeopardy is inapplicable where separate and distinct offenses occur in the same transaction. This is true even if the acts are committed close in time to one another."[20] The court found that there were various stages to the incident: the first involved physical violence, while the second was psychological in nature.[21] The court of appeals, citing *Ruiz v. State*,[22] concluded that the facts in *Sanchez* presented a scenario

---

[15] *Id.* at 170-71.

[16] *Id.* at 171.

[17] *Id.*

[18] *Id.* at 170.

[19] *Id.*

[20] *Id.* (internal citations omitted).

[21] *Id.*

[22] No. 13-01-0157-CR, 2002 Tex. App. LEXIS 735 (Tex. App.–Corpus Christi Jan. 31, 2002, no pet.) (mem. op., not designated for publication).

depicting two different attacks, even though they were rather close in time.[23] In *Ruiz*, "the appellant first struck his victim outside a bar while the victim was exiting a vehicle. He then stopped, entered the bar, spoke briefly with someone, and returned to the victim only to strike him again."[24] This Court, in *Ruiz*, concluded that the appellant "committed two distinguishable, discrete assaults against [the victim] which amounted to separate violations of the same statute[,]" and was "given punishment for two separate violations of one statutory offense."[25]

Here, there were various stages to the incident. First, Ross entered Mizes's home without her consent, stated that he wanted to kill her, and struck her with his gun. Then, when Mizes managed to escape and run outside, Ross ran after her, shot his gun, and when Mizes fell on the ground, Ross again threatened to kill her.

We conclude that like in *Ruiz* and *Sanchez*, the attacks against Mizes occurred in identifiable, discrete stages, and Ross is not being punished for the same crime. Instead, two separate aggravated assaults were committed against Mizes—once when she was hit in the face with the gun, and a second time when Ross shot toward her and threatened her outside. Therefore, the State was entitled to prosecute Ross for burglary with the underlying aggravated assault that occurred when he hit Mizes with the gun after entering her home without her permission and for aggravated assault when Ross threatened to kill

---

[23] *Sanchez*, 269 S.W.3d at 171.

[24] *Id.*

[25] *Ruiz*, 2002 Tex. App. LEXIS 735, at * 5.

Mizes after she ran outside.[26]  We overrule Ross's first issue.

### III. MOTION FOR NEW TRIAL WITHOUT A HEARING

By his second issue, Ross contends that by not conducting a hearing on his motion for new trial, he was denied "an opportunity to raise matters not determinable by the record."[27]

Pursuant to the Texas Rules of Appellate Procedure, "within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial."[28]  An untimely amended motion for new trial cannot form the basis of an appeal, and it is a nullity, even if an original motion for new trial was timely filed.[29]

We review a trial court's denial to conduct a hearing on a motion for new trial under an abuse of discretion standard of review.[30]  If a motion for new trial raises matters not determinable from the record which could entitle the defendant to relief, the trial judge abuses its discretion in failing to hold an evidentiary hearing, if the motion is supported by

---

[26] *See Sanchez*, 269 S.W.3d at 171; *see also Ruiz*, 2002 Tex. App. LEXIS 735 at *4 ("Thus appellant committed two distinguishable, discrete assaults against Garcia which amounted to separate violations of the same statute.  Appellant, therefore, was not subjected to multiple punishments for the same offense.  Rather, he was given two punishments for two separate violations of one statutory offense.").

[27] We note that Ross did not allege in his motion for new trial that trial counsel rendered ineffective assistance.

[28] TEX. R. APP. P. 21.4.

[29] *Rangel v. State*, 972 S.W.2d 827, 838 (Tex. App.–Corpus Christi 1998, pet. ref'd) (citations omitted).

[30] *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).

8

affidavits specifically showing the truth of the grounds of attack.[31]  If the affidavits do not supply reasonable grounds which would entitle the accused to the relief sought, the trial court does not abuse its discretion in refusing to hold a hearing.[32]

Here, the trial court imposed sentence on February 8, 2008.  Appellant filed a timely motion for new trial on March 6, 2008, alleging that there was newly discovered evidence.  However, Ross did not attach any affidavits in support of his motion.  On March 10, Ross filed an amended motion for new trial attaching six sworn affidavits.  Ross argues that these affidavits established that he was entitled to a hearing on the basis of newly discovered evidence.

The March 10 amended motion for new trial cannot form the basis of this appeal, and it is a nullity.[33]  Furthermore, we may not consider the affidavits attached to the amended motion.[34]  The only motion properly before the trial court was the March 6 motion.[35]  Ross's motion for new trial raised matters not determinable from the record; therefore, the trial court only abused its discretion in failing to hold an evidentiary hearing if the March 6 motion was supported by affidavits.[36]  However, Ross did not attach any affidavits to the March 6 motion.  Accordingly, we conclude that the trial court did not abuse its discretion in failing to hold a hearing on Ross's motion for new trial.  We overrule Ross's

---

[31] *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000) (en banc).

[32] *Id.*; *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (en banc).

[33] *Rangel*, 972 S.W.2d at 838.

[34] *See id.*

[35] *See id.*

[36] *King*, 29 S.W.3d at 569.

9

second issue.

## IV. Ineffective Assistance of Counsel

By his third issue, Ross contends that his trial counsel rendered ineffective assistance by conducting "an inadequate pre-trial investigation because he did not contact or interview several witnesses who could have testified in support of his alibi."

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington*.[37]  The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness.[38]  Assuming appellant has demonstrated deficient assistance, he must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different.[39] In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight."[40]

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence.[41]  Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that

---

[37] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[38] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 689, 694.

[39] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 689, 694.

[40] *Thompson*, 9 S.W.3d at 813.

[41] *Id.*

his actions could be considered sound trial strategy.[42]    A reviewing court will not second-guess legitimate tactical decisions made by trial counsel.[43] Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions.[44] Allegations of ineffectiveness must be firmly founded in the record.[45]

Ross argues that although his trial counsel called one "alibi witness," he provided details of other witnesses . . . who were never contacted or interviewed." Ross maintains that he attached to his amended motion for new trial affidavits of "several other witnesses who could have testified in support of [his] alibi."[46]

The record is silent regarding trial counsel's reason for allegedly not contacting or interviewing the potential witnesses who provided the affidavits.[47] Therefore, trial counsel's ineffectiveness is not firmly founded in the record.[48] Ross has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy.[49]

---

[42] *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).

[43] *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008).

[44] *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

[45] *Thompson*, 9 S.W.3d at 814.

[46] We note that none of the affidavits provide an alibi for Ross at the time that the offense occurred, except for Mitchell's affidavit. Mitchell's affidavit repeats his testimony that Ross was with him from 10:00 a.m. until 5:00 p.m. mowing yards on September 8, 2007. None of the other potential witnesses' affidavits state that they saw Ross after 10:00 a.m. on September 8, 2007. On the other hand, Mizes and her daughter both testified that the offense occurred at approximately noon.

[47] *See Rangel*, 972 S.W.2d at 838 ("Obviously, if trial counsel fails to seek out and interview potential witnesses, the trial record is unlikely to indicate trial counsel's deficiency.").

[48] *See Thompson*, 9 S.W.3d at 814.

[49] *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.

Furthermore, Ross has not demonstrated that but for trial counsel's alleged error, the result of his trial would have been different.[50]  Therefore, we overrule Ross's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 26th day of August, 2009.

---

[50] *See Thompson*, 9 S.W.3d at 812; *see also Strickland*, 466 U.S. at 689, 694.